Opinión disidente emitida por la
Juez Asociada Señora Ro-dríguez Rodríguez.
Disiento. No puedo avalar con mi voto un dictamen como el emitido hoy, que trastoca las vidas de miles de servidores públicos sin concederles su verdadero día en corte. La Opinión mayoritaria se revela como galimatías constitucionales, expuestas así, sin un análisis jurídico ri-guroso que acompañe la extensa e innecesaria disertación, y carente, además, de evidencia que fundamente sus conclusiones. El sustento de miles de servidores públicos merecía un Tribunal que examinara a cabalidad sus plan-teamientos de acuerdo con la prueba que en su momento se presentara, y no que se atendieran sus reclamos mediante una decisión que valida, cual sello de goma, los argumen-tos del Estado.
El trámite acelerado de certificación adoptado por este Tribunal para resolver apresuradamente las controversias planteadas hizo que ello fuera posible. Así, el expediente en estos casos está huérfano de prueba que sostenga las “conclusiones” a las que llega la mayoría con respecto a la Ley Núm. 7 de 9 de marzo de 2009, según enmendada (Ley 7). Ello denota la fatalidad del proceso adjudicativo se-guido por este Tribunal, pues los casos ante nuestra consi-deración presentan, no sólo asuntos estrictamente de De-recho, sino que plantean controversias cuya resolución no es factible sin recibir prueba alguna.
Por ejemplo, mediante los recursos presentados se cues-tionó la validez constitucional de la Ley 7, con diversos argumentos concernientes a: discrimen por afiliación polí-tica, discrimen por razón de edad, menoscabo de obligacio-nes contractuales y violaciones al principio de mérito y a la antigüedad del empleado, entre otros. Alegaciones como és-tas requerían, como mínimo, que se celebrara una vista en la que se presentara prueba sobre las violaciones constitu- *159 cionales invocadas. ¿Cómo es posible que podamos atender argumentos como éstos y tomar una determinación al res-pecto si no le hemos dado la oportunidad al empleado de presentar su caso?
La despreocupación que muestra la mayoría de los miembros de este Tribunal —al certificar estos casos en un trámite fast track o “por descargue”— y su determinación de resolver las controversias planteadas sin el beneficio de la prueba requerida, demuestra la liviandad con la cual se ha dispuesto de los reclamos de estos empleados públicos. Ello, a mi juicio, vulnera los valores más elementales de debido proceso de ley y de un procedimiento justo.
Por otro lado, el intento fallido de la mayoría por distin-guir su reciente dictamen en Hernández, Romero v. Pol. de P.R., 177 D.P.R. 121 (2009), sobre los derechos adquiridos, es un vivo ejemplo de la carencia de rigor de la Opinión mayoritaria. En Hernández, Romero se dijo que los dere-chos adquiridos “son las facultades legales regularmente ejercidas [mientras que] las expectativas [son] aquellas fa-cultades no ejercidas al momento del cambio de legisla-ción” (id., pág. 146) y que los primeros son “ ‘una situación consumada, en la que las partes afectadas descansaron en el estado de derecho que regía al amparo de la ley anterior’ ”. (Énfasis suprimido.) íd., pág. 147, citando a Consejo Titulares v. Williams Hospitality, 168 D.P.R. 101, 109 (2006). Incluso, se indicó que tales derechos son de tal naturaleza que “ni la Legislatura al promulgar una nueva ley, ni el Gobernador mediante una orden ejecutiva, los puede lesionar o ignorar. [Éstos] se incorpora [n] dentro del patrimonio del titular del derecho y está protegido consti-tucionalmente frente a cualquier gestión gubernamental que pretenda intervenirlo”. Id., pág. 146. De ahí se con-cluyó que los ex gobernadores peticionarios “no poseían una mera expectativa sobre el derecho de protección [mediante escoltas], sino que estos poseen un derecho ad-quirido [como consecuencia] de sus respectivos retiros *160 como primeros ejecutivos del país, al amparo de un estado de derecho específico”. Id., pág. 148.
En la Opinión que hoy emite este Tribunal se dispone que los empleados públicos que fueron cesanteados al am-paro de la Ley 7 no disfrutan de derechos adquiridos sobre sus empleos “pues se encuentra ausente el elemento del amparo de una ley anterior que hubiese concedido tal derecho”. (Énfasis en el original.) Opinión del Tribunal, págs. 69-70. Confieso que se me dificulta comprender este razonamiento y considero que el malabarismo jurídico que realiza la mayoría para concluir lo anterior es totalmente improcedente. Antes bien, la distinción elaborada en la Opinión del Tribunal levanta numerosas interrogantes. Cómo pueden crearse derechos adquiridos mediante prác-ticas administrativas y en ausencia de disposiciones esta-tutarias pero no mediante una extensa legislación que, protegiendo el principio de mérito, regula todo lo relacio-nado a: reclutamiento y selección; ascensos y descensos; traslados; adiestramientos; retribución; jornada laboral; beneficios marginales; retención, suspensiones y cesantías de los miles de empleados que se desempeñan en el servicio público.(1)
De igual forma, cabría preguntarse cómo es posible que los convenios colectivos suscritos por las uniones sindicales y el Estado, al amparo de la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45 de 25 de febrero de 1998, no establezcan una “ ‘situación consu-mada, en la que las partes afectadas descansaron en el estado de derecho que regía al amparo de la ley anterior’ ”. (Énfasis suprimido.) Hernández, Romero v. Pol. de P.R., supra, pág. 147. Por qué las protecciones contenidas en esos convenios colectivos no son “ ‘consecuencia de un hecho idó-neo, al producirlos en virtud de una ley vigente en el *161 tiempo en que el hecho ha sido realizado, y que se han incorporado a una persona’ Id., citando a Consejo Titulares v. Williams Hospitality, supra, págs. 108 — 109, que cita, a su vez, a J.M. Suárez Collía, El principio de irretroacti-vidad de las normas jurídicas, 2da ed. rev., Madrid, Actas, 1994, pág. 55. Lo cierto es que, en estricto rigor, el mismo raciocinio que utilizó la mayoría para concluir que los ex gobernadores tenían un derecho adquirido al uso de escol-tas policíacas exigía, en esta ocasión, que se concluyese que los empleados públicos despedidos tenían igualmente un derecho adquirido sobre su empleo. La incompatibilidad entre ambos dictámenes es evidente e irrefutable. Nada, que esta falta de constancia sólo se puede entender —tal vez— cuando, desde la orilla, observamos el flujo y reflujo de la marea.
En suma, el esfuerzo de la mayoría por distinguir lo indistinguible y su afán por disponer de las controversias ante nuestra consideración sin contar con los elementos de juicio necesarios, me obligan a disentir del curso de acción que hoy toma este Tribunal.
— O —

 Véase Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184 de 3 de agosto de 2004 (3 L.P.R.A. see. 1461 et seq.).